## PARKER et al. v. ALLISON. (No. 626.)

Court of Civil Appeals of Texas. Eastland.
Nov. 22, 1929.

Rehearing Denied Dec. 20, 1929.

T. R. Odell, of Throckmorton, for appellants.

B'. F. Reynolds and Jeff A. Fowler, both of Throckmorton, for appellee.

FUNDERBURK, J. The will of J. G. Parrott, duly probated in Throckmorton county, among other like bequests, made one as follows: "To my beloved nephew, J. G. Allison, one-eighth of my estate."

Paragraph 6 was as follows: "I desire and direct that the portion bequeathed and devised to J. G. Allison is subject to and conditioned upon the said J. G. Allison's paying a certain $800.00 note due me before my death, and in the event said note is not paid I devise and bequeath to W. L. Allison, my beloved nephew, one-sixth of my estate; to my beloved niece, Mrs. W. E. Eddington, one-sixth of my estate, and to my beloved niece, Margie Parrott, one-sixth of my estate."

In other words, the last-named parties, who had in the previous paragraph been bequeathed one-eighth of the estate, were, upon failure of the condition named, to receive each an equal part of the bequest to J. G. Allison.

Paragraph 7 of the will, in part, provides: "I hereby constitute and appoint my neighbor and friend J. G. Parker executor of this, my last will and testament, and direct that such bond be required of him as the County Judge of Throckmorton County may direct. It is my will that no other action be had in the County Court in the administration of my estate than to prove and record this will, return an inventory and appraisement of my estate, and list of claims, and to file and deliver to the court a complete and final settlement of my estate within twelve months after the probating of same."

J. G. Parker qualified as executor and, in the inventory and appraisement filed, listed an item as follows: "Note against J. G. Allison $625.00, due 9/26/28."

Parker as executor filed in the county court a final account, the date of the filing not being shown, but which account was sworn to on the 17th day of November, 1928. In the account it was undertaken to state the names of the persons entitled to receive the estate, and the amount to which each one was entitled, the name of J. G. Allison not appearing therein, but in lieu thereof it was stated that W. L. Allison, Mrs. W. E. Eddington, and Margie Parrott were each entitled to receive one-sixth of the estate. It was stated that deeds to the several parties of their interest accompanied the report and would be delivered upon approval thereof and execution of proper releases.

Paragraph 11 of the report was as follows: "The $625.00 promissory note of J. G. Allison to this estate, dated 9/26/27, and due 12 months after date, described as being a renewal off the $800.00 note due by J. G. Allison to J. G. Parrott mentioned in paragraph six of the will of the late J. G. Parrott, was found by this executor among the papers of the deceased upon taking charge of the estate. To it is pinned a note from J. G. Allison to J. G. Parrott, dated July 1st, 1925, for $800.00, bearing no interest, and payable in monthly installments of $15.00 each. This $800.00 note bears the notation 'Renewed by attached note G. D.' The will of the deceased with reference to J. G. Allison was conditioned upon the payment of this $800.00 note. This executor does not regard this renewal, if, in fact, it is a renewal, as having paid the $800.00 note, and has accordingly issued his bills of sale and executor's deeds in accordance with said paragraph six of the will of J. G. Parrott, deceased. The descriptions made of these two notes in the inventory, appraisement, bills of sale, etc., are not to be regarded as a recognition by this executor of the said $800.00 note having been paid in accordance with the terms of the will of J. G. Parrott, deceased, but merely to describe the instruments as received by this executor upon taking over the papers of the estate."

The $800 note referred to was as follows: "$800.00      Woodson, Texas, July 1, 1925.

"J. G. Allison after date, waiving grace, protest and notice of non-payment, I, we, or either of us, jointly and severally promise to pay to the order of J. G. Parrott Eight Hundred and no/100 Dollars, value received, and ten per centum additional for attorney's fees, if placed in the hands of an attorney for collection. Payable at rate of $15.00 per month until paid, commencing from date.

"J. G. Allison.
"Due $15.00 monthly
"Payable at Woodson State Bank, Woodson, Texas."

The $625 note referred to was as follows:

"$625.00      Woodson, Texas, 9/26/27

"12 Mo. after date, for value received, I, we or either of us, as principals and endorsers, waiving grace, demand, notice and protest, promise to pay to the order of J. G. Parrott Six Hundred Twenty Five and no/100 Dollars, with interest at the rate of 8 per cent per annum from date until paid, and ten per cent additional on principal and interest as attorney's fees if collected by law or placed with attorneys for collection. Full authority is hereby given to the legal holders hereof to sell any collateral security assigned or attached at public or private sale without notice, upon non-payment. It is hereby agreed by the makers hereof and all endorsers and sureties hereon, that any and all extensions of the time of payment of this note, or any part thereof, may be made without notice of same.

"J. G. Allison.
"Due 9/26/28."

To the final account of the executor, J. G. Allison filed a contest in the county court, asserting the right to share in the distribution of the estate to the extent of one-eighth of all the property belonging to the estate. With reference to the condition in the will, said contestant asserted that the condition had been complied with by the payment of $175 in cash and the execution of a new note for $625 due after the death of J. G. Parrott, and that said cash and said note were accepted by said Parrott as a satisfactory settlement of the $800 note named in clause 6 of the will, with the mutual agreement and understanding between the parties that said cash and said note should extinguish the $800 note. Upon the hearing of the contest the county court approved the account and expressly approved the proposed distribution of the estate. J. G. Allison appealed to the district court of Throckmorton county, where, upon the trial of the case, one special issue was submitted to the jury, as follows: "Did J. G. Allison accept the $625.00 note and the $100.00 deposited in the bank to his credit and the $75.00 prior payment on the $800.00 note in full settlement of said $800.00 note?"

The jury answered the issue in the affirmative, and thereupon judgment was rendered in favor of J. G. Allison, from which J. G. Parker, executor, and the distributees of the estate as made in his report, have prosecuted this appeal.

Appellants in their brief argue several questions that are not so presented by proper assignments and propositions as to authorize our consideration of same. The third proposition is as follows: "The judgment of the court and verdict of the jury must be based upon the pleadings and the proof and the evidence must sustain the allegations before a judgment is valid."

Three distinct things are thus asserted: (1) That a judgment of the court and verdict of the jury must be based upon the pleadings;

(2) that a judgment of the court and verdict of the jury must be based upon the proof; and (3) the evidence must sustain the allegations. It is manifest, therefore, that the proposition, aside from presenting merely abstract propositions of law, which have many times been held not to require consideration, is multifarious. We are therefore of opinion that this proposition presents no question for our determination.

The fourth proposition is as follows: "Payment of seventy-five ($75.00) dollars and one hundred ($100.00) dollars, and giving banker a new note for six hundred and twenty-five ($625.00) dollars does not constitute payment of a note of eight hundred ($800.00) dollars, interest and attorney fees. Bill of Exception, p. 33, Tr. Parties seeking advantage of an estoppel must show that he was misled to his injury."

■ As a proposition this is subject to the same objection as the third proposition. The assertion that the payment of $75 and $100, and giving the banker a new note for $625, does not constitute payment, is wholly distinct from the assertion that parties seeking advantage of estoppel must show that he was misled to his injury. The proposition is said to be germane to assignments Nos. 3, 4, and 7. When we turn to these assignments, we find that each one of them asserts error in overruling special exceptions to the pleadings. There is therefore no question thus presented for our consideration.

By the sixth proposition it is contended that: "The will alone can be looked to to determine the intention of the testator as to the things to be done before the devisees could share in the estate."

As a proposition this is said to be germane to an assignment complaining of the refusal of the court to charge the jury, at the request of the contestee, as follows: "You are charged as a part of the law of this case that you can look to the will of J. G. Parrott alone to determine his intentions as to the things to be done by J. G. Allison before he could share in his estate."

■ This was a general charge, not proper to be given in a case submitted to a jury upon special issues, and therefore wholly insufficient to present any such question as that attempted by the proposition.

By appellant's first proposition it is, in effect, contended that the district court was without jurisdiction to hear and determine the matter in controversy in an appeal from the county court, because the county court, in the first place, had no such jurisdiction. This contention requires us to determine whether or not the will of J. G. Parrott constituted J. G. Parker an independent executor, or more specifically whether or not the will withdrew from the county court the jurisdiction to pass upon and determine the

proper distribution to be made of the estate of J. G. Parrott.

Chapter 12, Revised Statutes 1925, provides for administration of an estate under will. Article 3436 provides that "Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate." The probate court has jurisdiction unless by the terms of the will it is clearly provided that it shall not. Hughes v. Mulanax, 105 Tex. 576, 153 S. W. 299, 303.

■ Clearly that was not done which the statute provides may be done to have the effect of making the administration of the estate independent of the court. The executor was not relieved from making bond, one of the most usual provisions of such a will. We need not determine whether this fact alone is determinative. In the case last cited the Supreme Court referred to the fact that there the will, instead of relieving the executor of an obligation to give any security, he was arbitrarily required to give a $2,000 bond, which fact seems to have been considered as in part creating a doubt as to whether the will undertook to withdraw the settlement of the estate from jurisdiction of the probate court, and which doubt it was held should be resolved in favor of the court's jurisdiction. In Epperson v. Reeves, 35 Tex. Civ. App. 167, 79 S. W. 845, it was held that a will susceptible of the construction that it provided for an independent administration unless because it required that the executors should file "from year to year a report showing the condition of the estate, which may be seen by creditors and heirs," did not, by the last-named provision, prevent the administration from being independent. But it seems importance was attached to the fact that the expressed purpose of the filing was that the report might be seen by creditors and heirs, thus in a way negativing the implication that it was to be passed upon and approved by the court. However, in Hughes v. Mulanax, supra, the Supreme Court not only distinguished Epperson v. Reeves, supra, but rather criticized it, and among other things as indicating the view that the statute must be literally complied with to deprive the county court of jurisdiction, said: "If we were to hold, in effect, that a testator, without observing substantially the restrictions which are imposed upon him by said article 1995 [present Art. 3436], may, according to his own desires or caprices, practically prescribe in his will the extent of the jurisdiction and control which the probate court may exercise over his estate, such holding would, in many instances, we fear, tend to derange our probate system, to create confusion as to rights and remedies of persons interested in such estate, and to

render and leave uncertain both jurisdiction and procedure in the courts."

Since the will expressly did not relieve the executor of the duty to file his final account, we are unable to say that it clearly deprived the court of jurisdiction to pass upon the account and to determine and order distribution of the estate. If such jurisdiction is not to be implied from the requirement as to filing the report, then since no other reason for the requirement appears, it is at least doubtful that jurisdiction of the court to pass upon the distribution was denied, which doubt must be resolved in favor of the jurisdiction.

But even if the will should be construed to provide for an independent administration of the estate, it does not seem to follow necessarily that the county court would not have jurisdiction to order distribution. The will itself does not distribute the estate, since the fact of the performance or breach of the condition upon which the bequest was made to J. G. Allison is not determinable from the will. The will does not provide, in case of dispute or contest, how the matter shall be determined, and hence it cannot be said that the will provides a means for partition. Under such circumstances, Rev. St. art. 3442, becomes applicable, even to an independent administration. It provides: "If such will does not distribute the entire estate of the testator, or provide a means for partition of said estate, the executor may file his final account in the court in which the will was probated, and ask partition and distribution of the estate; and the same shall be partitioned and distributed *in the manner provided for the partition and distribution of estates administered under the direction of the court.*" (Italics ours.)

When this statute appeared as article 1948, Rev. St. 1879, the Supreme Court, in Lumpkin v. Smith, 62 Tex. 249, construed its application in the case of an independent administration thus: "The manifest purpose of the statute relied on is to enable the executor, in case the will does not determine who are entitled to the entire estate, or in what proportions those made thereby beneficiaries are entitled, to have determination of such questions made by the county court, in order that he may turn the estate over to those entitled thereto."

Clearly the will in this case does not itself make distribution of the estate, since whether J. G. Allison was to receive one-eighth of the estate or not was dependent upon whether the $800 had been paid within the meaning of the provisions of the will. Nor does the will expressly authorize the executor to make partition or provide a procedure for doing so. We therefore, for this additional reason, overrule the proposition asserting want of jurisdiction in the probate court to entertain and determine the subject of the contest.

Appellants' second proposition is as follows: "A general exception to a petition contesting final settlement in County Court is good where the will required a contingency that must happen before contestant shall participate in the estate where the petition shows on its face that the conditions required have not been complied with."

The contestant pleaded that the $800 note had been paid before the death of the testator by paying a portion in cash and giving a note for the difference. It is true that this alone would not constitute a payment, but it was alleged, as shown in the foregoing statement, that same was done with the "mutual agreement and understanding between the parties that said cash and said note should extinguish the $800.00 note." This as against general demurrer was sufficient as a pleading of payment.

By their fifth proposition appellants complain of the action of the court in permitting the contestant J. G. Allison to testify with reference to the testator that "He nodded his head and mumbled 'Yes.'" This was in response to a question from Odell to testator. We are not called upon to determine if this was a statement by or transaction with the deceased, within the provisions of Rev. St. 1925, art. 3716. The objection to the testimony was that "the witness attempted to tell just what the dead man said, and it is a self serving declaration." The testimony, we think, was not inadmissible as against the objection made. Besides, it was stricken out, and the qualification to the bill shows that it was not objected to when first given. It would therefore appear that appellants are in no position to complain that the striking out of the testimony did not cure any possible objection to it.

Finding no errors in the judgment requiring revision, the judgment of the trial court will be affirmed, and it is accordingly so ordered.