Judy C. Parker, Justice
Ronald Ayers, in his capacity as the Guardian of Mary Theresa Ayers, appeals *629 from the trial court's order approving a settlement agreement arising during mediation and from the court's final judgment giving effect to that settlement. We will affirm.
Factual and Procedural Background
Gus W. Riefler, Jr., died on November 10, 2014, leaving a will which bequeathed his entire estate to Pauline Riefler, his wife of fifty-plus years. Pauline had predeceased him in January of 2014. The will named no contingent beneficiary, resulting in intestacy.
Riefler had no biological children. He was survived by a sister, Mary Theresa Ayers, and by Pauline's daughter, Claudia Jonas ("Claudia"), who had been raised in Riefler's household since the age of five. He was also survived by two nieces and a nephew, the children of his sister Nellie Nelson, who had predeceased him.
Claudia filed an application for letters of independent administration and an application for determination of heirship (Cause No. PR17203), and a petition alleging that she was the child and sole heir of Gus W. Riefler, Jr., pursuant to the doctrine of adoption by estoppel (Cause No. PR17203-1) in the County Court at Law of Cooke County, Texas. Claudia sought to have her son, Danny Joe Jonas, Jr., appointed as independent administrator.
Ronald Ayers, husband of Mary Theresa Ayers and acting in his capacity as her guardian, answered, specially excepting to Claudia's pleadings and denying her status as Riefler's heir. Ayers then filed his own application to declare heirship, seeking to have himself appointed as independent administrator (Cause No. PR17203-2). Ayers attached to his pleadings an "Order Proving Authority to Act in Pending Litigation" from the Dallas County Probate Court, in which the guardianship proceeding involving Mary Theresa Ayers was pending. The order provided that Ayers was "approved to act on behalf of Mary Theresa Ayers in all those legal proceedings currently pending in Cooke County involving the estate of Gus W. Riefler, Jr." The order also stated, "The Court further ORDERS that any settlement of the above matter be submitted to this Court for review before disposition of the Cooke County litigation."
Claudia died on January 8, 2016. A suggestion of death was filed identifying her four children as her heirs and requesting that they be substituted in her place in the pending actions. In response, Ayers filed motions to dismiss. Various other pleadings were filed, but they are not relevant to this appeal.
On April 7, 2016, and before the trial court had ruled on any matters, the parties attended mediation. Those parties were Danny Joe Jonas, Jr., Jonathan Paul Jonas, William Clifford Jonas, and Jeremy Matthew Jonas (the four children of Claudia Jonas); Paula Jackson, Anita Hawley, and James Timothy Nelson[2] (Riefler's nieces and nephew through his sister Nellie); and Ronald Ayers, Guardian of Mary Theresa Ayers. Ronald Brian Ayers, son of Mary Theresa and Ronald Ayers, also attended mediation. All parties except for Jackson and Hawley, both of whom supported the Jonas family's claims, were represented by counsel at mediation.
The mediation lasted for approximately ten hours and was facilitated by former statutory probate judge Nikki DeShazo. At the conclusion of the mediation, a settlement was reached which was executed by all the parties. The parties signed both a *630 "Rule 11 & Settlement Agreement" and a "Compromise Family Settlement Agreement and Mutual Release Arising During Mediation." Both agreements referenced all three pending causes.
Among other things, the parties agreed to consent to a judgment declaring Claudia Jonas as the child and sole heir-at-law of Riefler, to the appointment of Danny Joe Jonas, Jr., as Independent Administrator of Riefler's estate, and to the distribution of estate property. With regards to distribution, the agreement provided that Ayers, as Guardian of Mary Theresa Ayers, and James Timothy Nelson would receive $440,000.00, and that the Jonas brothers would receive the rest and remainder of Riefler's estate (approximately $920,000.00).
On May 20, 2016, Danny Joe Jonas, Jr., filed the two agreements in all three cause numbers, along with an application requesting that the trial court approve them. Ayers filed an objection to the application, raising three grounds: first, he contended that he was under the influence of prescription medication when he signed the agreements; second, he alleged that approval of the settlement agreement by the Dallas County Probate Court was necessary before the County Court at Law of Cooke County could approve it, and that "he will not request" such approval; and third, he claimed that he was misled as to the value of estate assets.
Ayers filed amended objections on June 9, 2016. He again alleged that approval from the Dallas County Probate Court was required, stating, "this Court should take no action until the mediation agreement is reviewed and approved by Dallas Probate Court." He also claimed that none of the Jonas brothers "have legally qualified as heirs of Claudia Jonas" and therefore they had no authority to proceed in the case. Ayers reiterated his objections based on alleged fraud and medical impairment.
On June 16, 2016, the Jonas brothers, individually and as heirs of Claudia Jonas, filed an amended petition in Cause No. PR17203-1. The brothers requested a finding that Claudia was Riefler's child under the doctrine of adoption by estoppel and entitled to a share of his estate, or, in the alternative, that Ayers breached the settlement agreement of April 7, entitling them to specific performance or damages.
The trial court held a hearing on the application to approve the settlement and the objections to the application on June 21, 2016. All parties were present. On June 24, the court signed an order approving the agreement. Danny Joe Jonas, Jr., filed a motion for entry of judgment. The trial court heard that motion on July 8, at the hearing to appoint Danny Joe Jonas, Jr., as Independent Administrator. Ayers was not present at the July 8 hearing. The trial court entered a final judgment in Cause No. PR17203-1 on July 8, 2016, and Danny Joe Jonas, Jr., was appointed and qualified as Independent Administrator.
That same day, Ayers filed a response objecting to the entry of judgment. He argued that the agreement required the approval of the Dallas County Probate Court before the trial court could approve the settlement. He maintained, "This has not been accomplished as agreed by the parties and therefore the Order of June 24, 2016 is premature." Ayers again urged that he was misled and that he was under the influence of medication which impaired him at the mediation. Ayers also filed an objection and motion to vacate judgment on the grounds that he did not receive notice of the July 8 hearing.
Danny Joe Jonas, Jr., filed objections to Ayers's motion to vacate the final judgment and a reply to Ayers's response to the motion for entry of judgment. He also *631 filed a motion to dismiss Ayers's application to declare heirship and for appointment of independent administrator in Cause No. PR17203-2.
The trial court set Ayers's objection and motion to vacate final judgment for hearing, which was held on July 25. Following the hearing, on August 2, the court denied Ayers's request to vacate the judgment and entered a final judgment in all three causes. In its final judgment, the court accepted and gave full effect to the agreements signed by the parties at mediation.
Ayers filed this appeal. He appeals the trial court's June 24 order approving the Rule 11 & Settlement Agreement, the July 8 final judgment in Cause No. PR17203-1, and the August 2 final judgment as to all three causes.
Law & Analysis
Issue One
In his first issue, Ayers contends that the Rule 11 & Settlement Agreement signed by the parties at mediation and accepted by the trial court is void and without effect because it was not approved by the probate court following the parties' mediation.[3] Ayers maintains that approval by the probate court was required by the parties' agreement, by the probate court's order of October 15, 2015, and by section 1151.102 of the Texas Estates Code.
We begin by observing that the Dallas County Probate Court had jurisdiction over the guardianship proceeding only. The Dallas County Probate Court had the authority to approve a distribution to the guardianship, but it did not have jurisdiction over the Cooke County litigation.
The parties' Rule 11 & Settlement Agreement refers to the Dallas County Probate Court in paragraph 5a, under the heading "Distribution of Estate Assets," which provides,
Subject to approval of the Dallas County Probate Court in pending Cause No. PR-15-02388-1 (Guardianship of Mary Ayers), RONALD AYERS, as Guardian of MARY AYERS, a/k/a MARY THERESA AYERS and JAMES TIMOTHY NELSON shall receive the total sum of $440,000.00 and shall receive such assets in full and final settlement of their interest in the Decedent's Estate. The Parties agree that DANNY JOE JONAS, JR., once appointed as Independent Administrator, shall deliver a check payable jointly to RONALD AYERS, Guardian of MARY AYERS, a/k/a MARY THERESA AYERS, and his counsel and JAMES TIMOTHY NELSON in accordance with the terms of this agreement.
The "subject to approval" language appears only before the provision setting forth the amount of money to be received by Ayers and James Timothy Nelson. No other reference to the Dallas County Probate Court is made. Notably, the agreement does not provide that the resolution of any other issue, such as the recognition of Claudia Jonas as Riefler's only child, is made subject to the approval of another court. Only the distribution of $440,000.00 to Ayers and Nelson was subject to the approval of the Dallas County Probate Court.
*632 It was Ayers's obligation, as guardian, to present the agreement to the Dallas County Probate Court for review, and he was the only party in a position to do so. Moreover, Ayers had a duty to use ordinary diligence to collect any claim or property for the guardianship estate. See TEX. ESTATES CODE ANN. § 1151.105 (West 2014).
Appellees argue that Ayers's failure to fulfill his obligation waived the right to avoid enforcement of the settlement agreement on this basis, and we agree. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. Sun Exploration & Prod. Co. v. Benton , 728 S.W.2d 35, 37 (Tex. 1987). Waiver can be established either by a party's express renunciation of a known right or by silence or inaction for so long a period as to show an intention to yield the known right. Tenneco Inc. v. Enterprise Prods. Co. , 925 S.W.2d 640, 643 (Tex. 1996).
The record does not reflect that Ayers sought the Dallas County Probate Court's review at any point while this matter was pending in the trial court, nor that Ayers ever requested a continuance to have that court consider the matter. On the contrary, Ayers stated that he would not present the agreement to the Dallas County Probate Court. Because Ayers's own tactics prevented court review from being obtained, he cannot now complain that review did not occur. We conclude that by stating he would not request approval of the agreement from the Dallas County Probate Court and by failing to seek review of the agreement, Ayers waived his right to complain that this provision of the parties' agreement was not fulfilled.
We turn next, then, to Ayers's argument that the Rule 11 & Settlement Agreement is void and without effect because the Order Proving Authority to Act in Pending Litigation issued by the Dallas County Probate Court and the Texas Estates Code require that the Dallas County Probate Court approve of the agreement to make it effective. The Dallas County Probate Court authorized Ayers "to act on behalf of Mary Theresa Ayers in all those legal proceedings currently pending" involving the Riefler estate. The probate court's order requires "that any settlement of the above matter be submitted to this Court for review before disposition of the Cooke County litigation" (emphasis added).
While Ayers argues that the failure to comply with this provision renders the settlement agreement void, the Jonas brothers allege that the agreement was not void, but merely voidable. A contract that is void cannot be ratified, whereas a voidable contract can be ratified. Harris v. Archer , 134 S.W.3d 411, 427 (Tex. App.-Amarillo 2004, pet. denied). The distinction is important because a void contract is a nullity from its inception, while a voidable contract continues in effect until repudiated. Mo. Pac. R.R. Co. v.Brazil , 72 Tex. 233, 10 S.W. 403, 406 (1888).
In his pleadings in the trial court following mediation, Ayers did not assert that the contract never came into existence; rather, he maintained that the agreement was subject to ratification (or avoidance) by the other court. That is the characteristic of a voidable agreement, not a void one.
An allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded. TEX. R. CIV. P. 94 (noting party must affirmatively plead any matter constituting an avoidance or affirmative defense); 950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship , 316 S.W.3d 191, 196 (Tex. App.-Houston [14th Dist.] 2010, no pet.). If a party fails to plead an affirmative *633 defense, it is waived. Int'lSec. Life Ins. Co. v. Kuhler , 459 S.W.2d 480, 482 (Tex. Civ. App.-Amarillo 1970, writ ref'd n.r.e.) ; Johnston v. McKinney Am., Inc. , 9 S.W.3d 271, 281 (Tex. App.-Houston [14th Dist.] 1999, pet. denied).
Even if Ayers had not waived this issue, we would nevertheless find that the Rule 11 & Settlement Agreement is not void but, at most, voidable. See Catlett v. Catlett , 630 S.W.2d 478, 482-83 (Tex. App.-Fort Worth 1982, writ ref'd n.r.e.) (unauthorized settlement of litigation in decedent's estate deemed voidable but not void). Although Ayers appears to urge that he lacked authority to make a compromise or settlement on behalf of the ward, the record does not show that he was not duly authorized to enter into the agreement. As guardian, Ayers could make a compromise or settlement if he complied with Texas Estates Code § 1151.102, which provides:
(b) On written application to the court, a guardian of the estate may take an action described by Subsection (c) if: (1) the guardian considers the action in the best interests of the estate; and (2) the action is authorized by court order.
(c) A guardian of the estate who complies with Subsection (b) may: ... make a compromise or a settlement in relation to property or a claim in dispute or litigation.
TEX. ESTATES CODE ANN. § 1151.102(b), (c) (West 2014).
We note that Ayers's written application to the court is not part of the record on appeal. However, by its Order Proving Authority to Act in Pending Litigation, the Dallas County Probate Court authorized Ayers "to act on behalf of Mary Theresa Ayers in all those legal proceedings currently pending in Cooke County involving the estate of Gus W. Riefler, Jr." This order gave Ayers broad authority to act on behalf of the ward, which we presume included the authority to enter into binding settlement agreements. See, e.g., Jones v. Griffith , 109 S.W.2d 565 (Tex. Civ. App.-Eastland 1937, no writ) (where record did not affirmatively show that guardian was not duly authorized to enter agreement, such authority was presumed). Moreover, although he clearly had a change of position after the settlement agreement was signed, Ayers has not argued that he, as guardian, did not consider the action to be in the best interests of the estate. Therefore, because the court had conferred on Ayers the power necessary to make the bargain, we hold that Ayers had the authority contemplated by Texas Estates Code § 1151.102, and his actions taken pursuant to that authorization are binding.
Consequently, we overrule Ayers's complaint that the Rule 11 & Settlement Agreement is void.
Issues Two through Four
In his second, third, and fourth issues, Ayers contends that the trial court erred in (1) finding Claudia was the only child of Gus W. Riefler, Jr., pursuant to the doctrine of adoption by estoppel, (2) appointing Danny Joe Jonas, Jr., as Independent Administrator, and (3) failing to determine that the Jonas brothers lack standing. We hold that these issues were resolved in the settlement agreement.
The parties' Rule 11 & Settlement Agreement specifically states, "The Parties agree that CLAUDIA JONAS is the only child of GUS W. RIEFLER, JR., pursuant to the doctrine of Adoption by Estoppel and is the sole heir-at-law of GUS W. RIEFLER, JR. The Parties agree to consent to a Judgment Declaring Heirship declaring CLAUDIA JONAS as the sole heir-at-law" of Riefler. Additionally, in their Compromise Family Settlement Agreement and Mutual Release Arising *634 During Mediation, Ayers and James Timothy Nelson agreed to withdraw their objections to the adoption by estoppel action. Therefore, any issue as to whether Claudia Jonas was the child of Riefler pursuant to the doctrine of adoption by estoppel was necessarily resolved by compromise upon the parties' entry into a settlement agreement. The court's finding of adoption by estoppel and its final judgment are consistent with the parties' agreement.[4]
Similarly, the parties agreed to the appointment of Danny Joe Jonas, Jr., as Independent Administrator of Riefler's estate. The Rule 11 & Settlement Agreement provides, "DANNY JOE JONAS, JR. shall be appointed as the sole Independent Administrator of the Estate of the Decedent." And, in their Compromise Family Settlement Agreement and Mutual Release Arising During Mediation, Ayers and James Timothy Nelson agreed to withdraw their objections to the appointment of Danny Joe Jonas, Jr., as independent administrator. Therefore, the parties' competing claims were necessarily resolved by compromise upon the parties' entry into a settlement agreement, and the court's final judgment is consistent with the parties' agreement.[5]
The issue of the Jonas brothers' standing was likewise resolved in the settlement agreement. Prior to mediation, Ayers had lodged objections to the Jonas brothers' continued prosecution of the suit and filed motions to dismiss, but the trial court had not addressed the issue. The record does not show that Ayers ever set his objections and motions to dismiss for hearing. Then, Ayers attended mediation and entered into an agreement with the Jonas brothers and other family members, all with the full knowledge that the Jonas brothers attended as heirs of their mother, Claudia Jonas, who had instituted the legal proceedings as a claimed heir of Riefler.
The record reflects that all of Riefler's heirs at law (Mary Theresa Ayers, by Ayers as her guardian, Paula Jackson, Anita Hawley, and James Timothy Nelson) were parties to the settlement agreement. The Jonas brothers, who claimed heirship through their mother Claudia, were also parties. While Claudia's status as Riefler's heir was contested, the Jonas brothers' status as Claudia's heirs was not contested. As attested to by Ayers's counsel, there were no unknown heirs of the Riefler estate. Thus, all parties necessary to enter an enforceable family settlement agreement participated in the mediation and settlement. See Estate of Morris , 577 S.W.2d 748, 755-56 (Tex. Civ. App.-Amarillo 1979, writ ref'd n.r.e.) ; In re Estate of Halbert , 172 S.W.3d 194, 200-01 (Tex. App.-Texarkana 2005, pet. denied).
In Texas, because Texas Estates Code § 101.001 provides for the immediate vesting of title at death, whether testate or intestate, "a family settlement agreement is an alternative to formal administration of a decedent's estate and is a favorite of the law." Nat. Gas Pipeline Co. v. Law , 65 S.W.3d 121, 126 (Tex. App.-Amarillo 2001, pet. denied) ; see also In re Estate of Hodges , 725 S.W.2d 265, 267 (Tex. App.-Amarillo 1986, writ ref'd n.r.e.) ("Because the property became theirs instantly, the family settlement doctrine permitted the devisees to agree to divide the property as they wished without *635 having to wait until after distribution through formal administration"). The family settlement doctrine is applicable generally when there is a disagreement on the distribution of an estate and the beneficiaries enter into an agreement to resolve the controversy. In re Estate of Halbert , 172 S.W.3d at 200. Family settlement agreements are favored in law because they tend to put an end to family controversies by way of compromise. Estate of Morris , 577 S.W.2d 748, 755 (Tex. Civ. App.-Amarillo 1979, writ ref'd n.r.e.).
Here, all the beneficiaries of Riefler's estate entered an agreement that resolved their disputes regarding the estate and made arrangements for the distribution of all estate assets. We hold that the agreement constituted a family settlement agreement in lieu of formal estate administration. As parties to the valid family settlement agreement which established their status as heirs, the Jonas brothers had standing to seek enforcement of the agreement. See, e.g., Shepherd v. Ledford , 962 S.W.2d 28, 31-32 (Tex. 1998).
The trial court did not err in entering a judgment enforcing the terms of the family settlement agreement. Because the second, third, and fourth issues raised by Ayers were conclusively resolved in the family settlement agreement, those issues are overruled.
Issue Five
In his final issue, Ayers challenges the trial court's finding that he had the requisite mental capacity to enter into the Rule 11 & Settlement Agreement at the time he signed it at the parties' mediation on April 7, 2016.
Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. Anderson v. City of Seven Points , 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings may be reviewed for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. Lifshutz v. Lifshutz , 199 S.W.3d 9, 17 (Tex. App.-San Antonio 2006, pet. denied) ; Elk River, Inc. v. Garrison Tool & Die, Ltd. , 222 S.W.3d 772, 789 (Tex. App.-Dallas 2007, no pet.).
The law presumes a party to be mentally competent and places the burden of proving incompetence on the party alleging it. Hall v. Hall , 352 S.W.2d 765, 767 (Tex. Civ. App.-Houston 1962, no writ). Where an appellant attacks the legal sufficiency of an adverse answer to an issue on which he had the burden of proof, the appellant must overcome two hurdles. Victoria Bank & Trust Co. v. Brady , 811 S.W.2d 931, 940 (Tex. 1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary, and second, if there is no evidence to support the finding, then the entire record must be examined to determine if the contrary proposition is established as a matter of law. Id. The issue should be sustained only if the contrary proposition is conclusively established. Dow Chem. Co. v. Francis , 46 S.W.3d 237, 241 (Tex. 2001).
Similarly, if a party with the burden of proof makes a factual sufficiency challenge, he must show that the finding was against the "great weight and preponderance" of the evidence. Id. at 242. In reviewing an issue asserting that a finding is against the great weight and preponderance of the evidence, we must consider and weigh all the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. Id. at 242.
*636 To establish mental capacity to contract in Texas, the evidence must show that, at the time of contracting, the person "appreciated the effect of what [he] was doing and understood the nature and consequences of [his] acts and the business [he] was transacting." Mandell & Wright v. Thomas , 441 S.W.2d 841, 845 (Tex. 1969). Circumstantial evidence may be relevant to proving capacity or lack thereof, such as the conduct of the party in question, circumstances tending to produce a particular mental condition, and prior or subsequent existence of a mental condition from which a party's capacity or incapacity at the time in question may be inferred. In re Estate of Robinson , 140 S.W.3d 782, 793 (Tex. App.-Corpus Christi 2004, pet. denied). As a general rule, the question of whether a person, at the time of contracting, knows or understands the nature and consequences of his actions is a question of fact for the jury. See Fox v. Lewis , 344 S.W.2d 731, 739 (Tex. Civ. App.-Austin 1961, writ ref'd n.r.e.).
In support of his argument that he was not competent at the time he negotiated and signed the agreements, Ayers points to evidence that he was under the influence of prescription medication during the April 7 mediation. At the evidentiary hearing on the application to approve the agreement, Ayers provided a letter from his neurologist regarding Ayers's medication. The letter, dated May 23, 2016, states,
Mr. Ayers is under my care for tremor. Back earlier this spring we were slowly raising his dose of primidone, and at one point this was high enough to cause sedation and may have impaired his judgment. He has been off this medication since April 26, 2016. It is my understanding that he signed some legal documents which he may or may not have understood. It is possible that his medications played a role in this.
Additionally, Ayers testified that he "just didn't know what [he] was doing" at mediation and that he "wasn't understanding." Ayers's son, Ronald Brian Ayers, testified that his father "was really just not with it" at mediation.
On the other hand, Ayers testified that he understood the settlement agreement on April 8, 2016 (the day following mediation), and that he took the same dose of medication on April 8 that he claimed had interfered with his judgment on April 7. Ayers acknowledged that he did not tell his attorney, his son, the mediator, or anyone else of his claimed impairment at any point during the ten-hour mediation on April 7. Ayers testified that, at the time of mediation, he understood his wife's claim on the estate and he understood that the agreement he was making was for less than 50 percent. Ayers admitted that he felt that he did not cut a good deal on April 7 and he wants to get out of it.
Other witnesses who attended mediation testified that Ayers did not appear sedated or confused. Paula Jackson testified that Ayers "certainly seemed wide awake and to have a sense of what had gone on" when she encountered him at the conclusion of mediation. Danny Joe Jonas, Jr., testified that Ayers did not seem confused, but rather appeared angry immediately after the mediation.
The letter from Ayers's physician regarding the effect of Ayers's medication is speculative at best. The trial court had before it conflicting testimony regarding Ayers's capacity at the time of mediation. The court was in the best position to evaluate the testimony and resolve any conflicts in the testimony. In re E.C.M. , No. 07-09-00242-CV, 2010 WL 2943091, at *2, 2010 Tex. App. LEXIS 5981 at *4 (Tex. App.-Amarillo July 28, 2010, no pet.) (mem. op.) (citing *637 Zeifman v. Michels , 212 S.W.3d 582, 587 (Tex. App.-Austin 2006, pet. denied)). It is not within our province to interfere with the trial court's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. See Benoit v. Wilson , 150 Tex. 273, 239 S.W.2d 792, 796-97 (1951).
Here, the evidence neither establishes as a matter of law that Ayers lacked capacity to enter into the agreement nor is it against the great weight and preponderance of the evidence such that it is clearly wrong or unjust. We, therefore, overrule appellant's fifth issue.
Conclusion
Having overruled all of Ayers's issues on appeal, we affirm the judgment of the trial court.

Jackson, Hawley, and Nelson participated in the proceedings in the trial court but are not parties to this appeal.

In his opening brief, Ayers states that the guardianship matter was transferred to the 220th Judicial District Court, Bosque, Comanche, and Hamilton Counties, and he believes that court, on December 6, 2016, "disapproved and rejected the proposed settlement in Cause numbers PR17203, PR17203-1, and PR17203-2." He states, "A copy of that Order will be submitted to this Court when obtained." However, no order regarding the transfer or the court's position on the settlement appears in the record.

Nothing in the Rule 11 & Settlement Agreement purported to require the approval of the Dallas County Probate Court to establish Claudia Jonas's status as sole heir-at-law.

Nothing in the Rule 11 & Settlement Agreement purported to require the approval of the Dallas County Probate Court as to Danny Joe Jonas, Jr.'s appointment as Independent Administrator.